[No. 1180, January 14, 1908.]

ELOISA LUNA DE BERGERE, et als, Appellees, v. LUCIANO CHAVES, et als, Appellants.

SYLLABUS (BY THE COURT).

1. Tenants in common need not join in a suit in eject-ment to recover possession of lands, although they may do so if they so desire.

2. A tenant in common may sue separately in ejectment, and if the defendant shows no title, he is entitled to recover possession of the entire estate, in subordination however, to the rights of his co-tenants.

3. The case of Neher v. Armijo, 9 N. M. 325, is reversed so far as it holds that if a tenant in common sues alone in ejectment, he can recover only his own interest in the estate.

4. In the case at bar the paper relied on is not a deed, but is an executory contract, for the giving of a deed to the Galisteo Ranch, by Manuel A. Otero, to Jesus M. Sena y Baca, upon the approval of the Bartolome Baca Grant.

5. The instrument in writing under which Jesus M. Sena y Baca took possession of the Galisteo Ranch, being an executory contract, the statute of limitations, under which title by adverse possession might be gained would not begin to run until Sena y Baca, or those claiming under him, distinctly and unequivocally repudiated the title of Manuel A. Otero, to the Galisteo Ranch.

Appeal from the District Court for the County of San-
ta Fe. Affirmed.

A. B. RENEHAN, for Appellants.

The statute of limitations began to run on date of the
adjudication and approval of the Bartolome Baca grant,
the contingency fixed by the parties if the Galisteo ranch
was·"sold and conveyed" on condition. Mahoning County v.
Young, 16 U. S. App. 265; 6 Enc. of Law 502, note·9.

When the statute of limitations has once begun to
run, nothing will toll it, and one disability cannot be tacked
to another. McDonald v. Hovey et al, 110 U. S. 619.;
Bauserman v. Blunt, 147 U. S. 657; Stanley. v. Schwalby,
162 U. S. 273; Davis v. Coblens, 174 U. S. 725 and cases
cited; 13 Rose's Notes 624, "Accumulative Disabilities;"
19 Enc. of Law, 2 ed., 224-226.

There was a mutual obligation between the parties
to the contract to surrender the property conveyed by one
to the other, and this surrender is essential to the main-
tenance of ejectment. Adams v. Copper Co., 7 Fed. 637;
4 Enc. P. & P. 636, note 4.

The plaintiffs must recover. if at all, on the
strength of their own title and not on the weakness of that
of the defendants. King v. Mullins et al, 171 U. S. (L.
ed.) 214; 13 Rose's Notes 422; Smith v. McCann, 24
How. 403.

The plaintiffs are estopped by laches to have or re-
cover the said premises. Dickerson v. Colgrove, 100 U. S.
578; Kirk v. Hamilton, 102 U. S. 78; 9 Rose's Notes 872;
Naddo v. Bardon, 51 Fed. 492.

In ejectment, the burden of proof is upon the plain-
tiffs to show their title to the identical land claimed by the
defendants. Maxwell Land Grant Co. v. Dawson, 151 U.
S. (L. ed.) 285; U. S. v. Cook, 84 U. S. 17 Wall. 168
(21,538); Steel v. Smith, 1 Barn. & Ald. 99; Vavasour v.
Ormond, 6 Barn. & C. 430; Com. v. Hart, 11 Cush. 130;
Com. v. Jennings, 121 Mass. 57, 23 Am. Rep. 249; State
v. Abbey, 29 Vt. 66, 67 Am. Rep. 754; Myers v. Carr, 12
Mich. 63; Lynch v. People, 16 Mich. 472; Osburn v. Lov-
ell, 36 Mich. 246. 250; Hawkins v. Barney, 30 U. S. 5

Pet. 457 (8:190); Taylor v. Taylor, 3 A. K. Marsh 18; Madison v. Owens, 6 Litt. Sel. Cas. 281; Guthrie v. Lewis, 1 T. B. Mon. 143.

"In an executory contract of purchase, the possession is originally rightful, and it may be that until the party in possession is called upon to restore it, he cannot be ejected without a demand or notice to quit." 1 Wall. 282; Costigan v. Wood, 5 Cranch (C. C.) 507; Jones v. Temple, 87 Va. 210; Williamson v. Paxton, 18 Gratt, 475; Stackhouse v. Doe, 5 Blackf. 570; Getty v. Poters, 10 L. R. A. 465; Lowndes v. Huntington, 153 U. S. (L. ed.) 624.

The plaintiffs have not connected themselves by blood or contract with the original allottees of the Galisteo Grant. Simmons v. Wagner, 101 U. S. 260; Hanrick v. Patrick, 119 U. S. 172; Smith v. McCann, 24 How. 403; C. L. 1897, sec. 3165.

The Galisteo grant was a perfect grant at the time of the cession, as to which the statute of limitations will run before the confirmation, survey or patent. Hayes v. U. S., 175 U. S. (L. ed.) 150; U. S. v. Chaves, 159 U. S. (L. ed.) 215, 220; Bergere v. U. S., 168 U. S. (L. ed.) 386, 387; Strother v. Lucas, 12 Pet. 410; De Lassus v. U. S., 9 Pet. 135; 3 Rose's Notes 747; Reynold's Spanish and Mexican Land Laws 95; U. S. v. Conway, 175 U. S. (L. ed.) 60; Ainsa v. N. M. & Ariz. R. Co., 175 U. S. (L. ed.) 81.

Adverse possession has equal force with an inheritance or deed to vest title. Lapse of time not only bars the remedy of the original owner, but extinguishes his right and vests a complete title in the adverse holder. Maxwell Land Grant Co. v. Dawson, 151 U. S. (L. ed.) and cases cited; Teall v. Schroeder, 158 U. S. (L. ed.) 941; Sharon v. Tucker, 144 U. S. (L. ed.) 535; Ewing v. Burnett, 11 Pet. 41; Ellicott v. Pearl, 10 Pet. 412; 3 Rose's Notes 592; Simmons Creek Coal Co. v. Doran, 142 U. S. (L. ed.) 1063; Smith v. Gale, 144 U. S. (L. ed.) 521; Zeller's Lessee v. Eckhart, 4 How. 296; Willison v. Watkins, 3 Pet. 342 and cases cited; Bradstreet v. Huntington, 5 Pet. 429 and cases cited; McCloskey v. Barr, 42

Fed. 613; 1 Enc. of Law, (L. ed.) 803, 805; Hubbard v. Hubbard, 97 Mass. 191; Carbon etc. Coal Co. v. Murphy, 101 Ind. 115; Barrie v. Smith, 47 Mich. 132; 6 Enc. of Law, 2 ed., 502, note 9, 508; Mahoning Co. v. Young, 16 U. S. App. 265; Toltec Ranch Co. v. Cook, 191 U. S. 532.

Lands previously granted by the predecessor government did not pass to the United States under the treaty of Guadalupe Hidalgo. U. S. v. Conway, 175 U. S. (L. ed.) 72; Ainsa v. N. M. & Ariz. R. Co., 175 U. S. (L. ed.) 81.

Lapse of time accompanied by acts done may warrant the presumption of grant or title by record from the government. Whitney v. U. S., 167 U. S. (L. ed.) 269, 270; Bergere v. U. S., 168 U. S. (L. ed.) 386, 387; Hays v. U. S., 175 U. S. (L. ed.): 155; U. S. v. Chaves, 159 U. S. (L. ed.) 220.

The alleged interlineations and erasures in defendant's exhibit will be presumed to have been made prior to the execution of the instrument. Hanrick v. Patrick, 119 U. S. 172.

A presumption of grant and deed arises from lapse of time. Fletcher v. Fuller, 120 U. S. 545; Eldrirge v. Knott, Cowp. 215; Hillary v. Waller, 12 Ves. 239, 252; U. S. v. Chaves, 175 U. S. 520; Van Gunden v. Va. Coal, etc. Co., 52 Fed. 856; Fuller v. Fletcher, 44 Fed. 37; U. S. v. Devereaux, 90 Fed. 187; Zeller's Lessee v. Eckhart, 4 How. 297.

Possession for years, under a contract of sale, justifies the presumption of a deed. Woodson v. Scott, 1 Dana 472; Downing v. Ford, 9 Dana 373; Brock v. Savage, 46 Pa. St. 83.

Where parties exchange land and enter into possession under a contract to deed to each other at a particular day, neither can maintain ejectment against the other without notice and without an offer to rescind the contract. Maynard v. Cable, Wright, Ohio, 18; Jackson v. Niven, 10 Johns 335; Hotaling v. Hotaling. 47 Barb. 167.

The intention of the parties controls as to the time of performance, and that time may be fixed with reference

to the doing of some specified act. 2 Page on Contracts, secs. 1153, 1156.

The surveyor general could not adjudicate the Bartolome Baca grant. Catron v. Joseph, 81 Pac. 439, distinguished; sec. 8, p. 309, 10 Stats.

"Notice to quit is generally necessary where the relation of landlord and tenant exists and no definite period is fixed for the termination of the estate, but where a lease is to expire at a certain time, a notice to quit is not necessary in order to recover in ejectment because to hold over would be wrong after the duration of the estate was fixed and well-known to lessor and lessee." Gregg v. Von Phul, 1 Wall, 281.

CATRON & GORTNER, for Appellees.

The intention of the parties, particularly the grantors, must always control where it is doubtful whether an instrument should operate as a deed, effecting a present transfer of title, or a covenant or agreement to convey a title in the future. 9 Enc. Law, 2 ed. 93; Williams v. Payne, 169 U. S. 76; Jackson v. Montcrief, 5 Wend. 29; Ogden v. Browne, 33 Pa. St. 248; Phillips v. Swank, 120 Pa. St. 84; Kenrick v. Smick, 7 Watts. & Searg. 41; Bortz v. Bortz, 4 Pa. 382; Williams v. Bently, 27 Pa. 301; Bell v. McDuffie, 71 Ga. 264; Jackson v. Niven, 10 Johns., N. Y. 335; Neave v. Jenkins, 2 Yeates, Pa. 107; Sherman v. Dill, 4 Yeates, Pa. 295, 2 Am. Dec. 408; Stauffer v. Coleman, 1 Yeates, Pa. 393; Stokely v. Trout, 3 Watts, Pa. 163; Stewart v. Lang, 37 Pa. St. 201, Am. Dec. 78, 414; Jackson v. Clark, 3 Johns, N. Y. 424; Shenly v. Pittsburg, 104 Pa. St. 472.

Possession under the executory contract in question is not adverse, it is expressly a possession in recognition of, and on behalf of the owner. 1 Cyc. 1045, 1047, 1061, and citations; Hart v. Bostwick, 14 Fla. 178; Tyler Ejectment 875; 1 Johns 156; 9 Johns 163; 3 Johns. Cases 124; 2 Bibbs R. 507; 1 Marsh 62; Kirk v. Smith, 9 Wheat. 241; Jackson v. Booker, 48 Ill. 203; Floyd v. Mintrey, 7 Rich. 181; Williams v. Cash, 27 Ga. 507; Jackson v. Camp, 1 Cow. 605; Woods v. Dille, 11 Ohio, 455; McManus v.

Bergere v. Chaves.

Matthews, 55 S. W., Texas Ct. App. 589; Durst v. Skillern, 45 S. W., Tex. Ct. App. 840; Greene v. Mason, 9 Vt. 37, s. c. 31 Am. Dec. 605; 1 Enc. Law, 2 ed. 799, 810 and citations; Telgham v. Little, 13 Ill. 241; Alderson v. Marshall, 7 Mont. 288; Jones v. Pelham, 84 Ala. 208; Brunson v. Morgan, 84 Ala. 598; Estes v. Long, 71 Mo. 605; Sch. Directors v. Edington, 40 La. An. 633; Avery v. Baum, Wright, Ohio 576; Thayer v. Society, 20 Pa. St. 62; Bidwell v. Evans, 156 Pa. St. 30; Davis v. Hurst, 14 S. W. 610; Udell v. Peak, 70 Tex. 547; Wild v. Serpell, 10 Grat. Va. 405; Seed v. Shepley, 6 Vt. 602; Holley v. Hawley, 39 Vt. 534; Swan v. Thayer, 36 W. Va. 46; Adams v. Fullam, 47 Vt. 558; Pratt v. Canfield, 67 Mo. 50; Lucas v. Brooks, 18 Wall. 436; Kirk v. Smith, 9 Wheat. 241; Heermans v. Schmaltz, 10 Biss. 323; Stansbury v. Taggart, 3 McLean 457; Graydon v. Hurd; 55 Fed. 724; Clinton Wire Co. v. Gardner, 99 Ill. 151; Mosher v. Reding, 12 Me. 478; Gwyn v. Jones, 2 Gill & J. Md. 173; Lyebrook v. Hall, 73 Miss. 509; Carson v. Broady, 56 Neb. 648; Den v. Adams, 12 N. J. L. 99; People v. Paulding, 22 Hun. N. Y. 91; Jackson v. Cairns, 20 Johns. N. Y. 301; Huntington v. Mattfield, 55 S. W. Tex. 361; Holman v. Bonner, 63 Miss. 131; Hannibal, etc. R. Co. v. Miller, 115 Mo. 158, S. C. 21 S. W. 915.

"All persons claiming under a tenant, or deriving their possession from him, however remotely, are precluded from relying upon their possession for the purpose of barring the title of the landlord." 1 Enc. of Law, 811 and citations; 1 Cyc. 1062 and citations; Bedlow v. N. Y. Floating Dry Dock Co., 112 N. Y. 265; Whiting v. Edmunds, 94 N. Y. 309; Potts v. Coleman, 67 Ala. 221; Russell v. Erwin, 38 Ala. 44; Jackson v. Harder, 4 Johns, N. Y. 202.

"The widow of a vendee in an executory contract, who continues possession after his death, stands upon the same footing with regard to the vendor as her husband did." 1 Cyc. 1049; Blackwell v. Ryan, 21 S. C. 112.

"The possession of a purchaser from a vendee on an executory contract is on the same footing as that of the original vendee." 1 Cyc. 1049; Hannibal & St. Jo. Co.

v. Miller, 115 Mo. 158; Fulkerson v. Brownless, 69 Mo. 371; Jackson v., Bard, 4 Johns., N. Y. 230; Kechum v. Spurlock, 34 W. Va. 597; Timmins v. Kidwell, 138 Ill. 13; Quinn v. Quinn, 27 Wis. 168.

Until 1895, the Baca grant remained sub judice, without adjudication and approval, and without the definite action required by the contract. Ortiz v. U. S., 176 U. S. 427; Catron v. Joseph, 81 Pac. 439.

"The continuance of possession by holding over after the lease is not adverse." 1 Enc. Law 811.

Returning for assessment, or even partial payment of taxes, does not constitute adverse possession. Laws of 1899, p. 133; Cyc. Law and Proc. 1106 and 1107 and authorities cited; McDonald v. Drew, 97 Cal. 266; Perry v. Burton, 126 Ill. 599; Irving v. Brownell, 11 Ill. 414; Blakeney v. Ferguson, 20 Ark. 554; Castro v. Wurzbach, 13 Tex. 131; Art. 2392, Texas, Hart Dig.; Murphy v. Welder, 5? Tex. 240; Martin v. Ward, 69 Cal. 129.

"A tenant in common, is, as against every person but his co-tenants, entitled to possession of every part of the common lands." Freeman on Cotenancy & Partition, secs. 343, 344. "Each tenant can pursue his remedies independent of the others. Sedgwick & Wait, Trial of Title to Land, sec. 300; Barrett v. French, 1 Conn. 364; Hibbard v. Foster, 24 Vt. 542; Chesround v. Cunningham, 3 Blackf. 82; Treat v. Riley, 35 Cal. 129; Touchard v. Crow, 20 Cal. 150; Crooks v. Vandervort, 13 Neb. 505; Stark v. Barrett, 15 Cal. 362; Collier v. Corbett, 15 Cal. 183; Croft v. Rains, 10 Tex. 523; Watrous v. McGrew, 16 Tex. 510; Grassmeyer v. Beeson, 18 Tex. 766; Hutchings v. Bacon, 46 Tex. 414; Read v. Allen, 56 Tex. 176; Sowers v. Peterson, 59 Tex. 216; Sharon v. Davidson, 4 Nev. 416; Simmons v. Spratt, 9 L. R. A. 347, 26 Fla. 461; Smith v. Starkweather, 5 Day, Conn. 210; Bush v. Bradyley, 4 Day, Conn. 298; Cushing v. Miller, 62 N. H. 525, 526, citing, Coit v. Wells, 2 Vt. 318; Chandler v. Spear, 22 Vt. 388; Robinson v. Johnson, 36 Vt. 74; King v Bullock, 9 Dana 41; Rabe v. Fyler, 10 S .& M., Miss. 440; Chipman v. Hastings, 50 Cal. 314; 1 Cyc. 1024,

1026, 1027 and citations; Hardy v. Johnson, 1 Wall. 373; Neher v. Armijo, 9 N. M. 332, distinguished.

A claim once filed remains sub-judice before the surveyor general, and Congress, subject to "adjudication and approval" at any time. Act of 1854, 10 Stat. 308; Ortiz v. U. S., 176 U. S. 427.

"In order to perfect a title by adverse possession, such possession must be continuous for the whole period prescribed by the statute of limitations." 1 Cyc. Law and Proc., 1000, 1012 and authorities cited. Fletcher v. Fuller, 120 U. S. 551.

"Allotment grants." U. S. v. Sandoval, 167 U. S. 298; Rio Arriba Company v. U. S., 167 U. S. 308.

Defendants having pleaded the statute of adverse possession are estopped to deny that they are in hostile possession. 15 Cyc. 56; Williams v. Cuch, 73 Am. Dec. 739.

Neither party can deny the title under which he claims. 15 Cyc. 47, and citations.

Hays v. U. S., 175 U. S. 150, and U. S. v. Chaves, 159 U. S. 215, do not hold that a grant becomes perfect by prescription. The Galisteo Grant was not a perfect and complete grant at the time of the cession. Ainsa v. U. S., 161 U. S. 208; Territory v. Persons, etc., 76 Pac. 317; Grant v. Jaramillo, 6 N. M. 313; Menard's Heirs v. Massey, 8 How. 293; West v. Cochran, 17 How. 403; Waddingham v. Robledo, 6 N. M. 373; Chaves v. Chaves, 7 N. M. 66; Dent v. Emnenger, 14 Wal. 108; Stoneroad v. Stoneroad, 158 U. S. 251; Ainsa v. N. M. R., 175 U. S. 85, 86; Tameling v. U. S. Freehold Co., 93 U. S. 644; Astiazaran v. Santa Rita Mining Co., 148 U. S. 80; Rio Arriba Co. v. U. S., 167 U. S. 308; Bergere v. U. S., 168 U. S. 66.

## STATEMENT OF FACTS

This is a suit in ejectment, brought by the plaintiffs, to recover the possession of a certain tract of land situated in Santa Fe County, New Mexico, and known as the "Galisteo Ranch". A jury was waived and the evidence in the case was taken by the Hon. John R. McFie, Judge of the First Judicial District Court of the Territory of New Mexico, but on March 3rd, A. D., 1906, the said judge

disqualified himself, and by consent of all the parties the cause was referred to the Hon. Edward A. Mann, Associate Justice of the Supreme Court of this Territory, who heard the arguments and rendered a judgment in the case.

It will be unnecessary to trace the title to the Galisteo Ranch back of June 22nd, 1878, at which time the title to the ranch was in Manuel Antonio Otero, as all of the parties to this controversy trace their claims to him, as the common source.

On June 22nd, 1878, Manuel A. Otero and one Jesus M. Sena y Baca, entered into a contract or agreement, written in Spanish, a translation of which reads as follows, to-wit:

"KNOW ALL MEN BY THESE PRESENTS: That I, the undersigned, Manuel Antonio Otero, resident of the county of Valencia, in the Territory of New Mexico, for consideration, have sold and transferred in favor of Jesus M. Sena y Baca and Agapita Ortiz, his wife, a ranch known as the Ranch of Galisteo which is situated in the county of Santa Fe and Territory aforesaid, known as the ranch. which was formerly of the deceased Don Miguel E. Pino, and that I will give and execute the documents of conveyance of the said ranch in favor of Jesus M. Sena y Baca and Agapita Ortiz, as soon as there shall be adjudicated and approved by the Surveyor General the Grant of Bartolome Baca of a tract which was ceded to him by the Governor Melgarez in the year 1819, and the which is situate in the county of Valencia in the Territory of New Mexico, and furthermore, they will take possession of the aforesaid ranch and will have and enjoy all the products of the same until the proper documents may be executed, and in conformity with the above stated; and the said Jesus M. Sena y Baca so agrees and has signed here jointly with me.

In witness whereof, we sign the present in La Constancia, County of Valencia, this 22nd day of June, A. D., 1878.

MANUEL A. OTERO.
JESUS M. SENA Y BACA."

Under this contract or agreement Sena y Baca went into possession of the lands in controversy and so remained until his death in the year 1885, when his rights descended to his widow, who, continued in possession until July 10, 1888, when she quit-claimed her rights in it to one Jesse D. Rumberg, and at the same time delivered to him the original contract or agreement between her husband and Otero, both of which instruments Rumberg had placed of record. Rumberg continued in possession of the property until July 18th, 1889, when he quit-claimed the same to Jose de la Cruz Chaves, and from Jose de la Cruz Chaves, the property came into the possession of his heirs at law, the defendants herein. The contract or agreement between Sena y Baca and Otero, and which is set out above, was handed over to the several occupants of the property and was introduced in evidence on the trial of this case. Indeed the contract or agreement seems to have been executed in duplicate, as both the plaintiffs and defendants have one, which are identical, except that the one held by the defendants has certain interlineations in it setting out a consideration of $1000.00 for the alleged sale. During all of the time that the property was in the possession of Sena y Baca and his privies, their possession was continuous. They farmed the land; made certain improvements on it by building fences and acequias; have received rentals for parts of it which was farmed on shares and have exercised all of the control over the property which its owner might do.

The evidence discloses that Manuel Antonio Otero attempted to get the Bartolome Baca Grant, approved by the surveyor general of New Mexico, but that official made an unfavorable report on the validity of the grant, and recommended that it be rejected, but before congress took any action on this report of the surveyor general, the Court of Private Land Claims was created and empowered to adjudicate and determine the validity of land grants made by the governments of Spain and Mexico, in New Mexico and other Territories. The Oteros prosecuted their claim for confirmation of the Bartolome Baca Grant before the Court of Private Land Claims, and secured a favorable decision

from that court, for a part of the grant, but on appeal the Supreme Court of the United States in 1897, finally rejected the grant.

After the creation of the Court of Private Land Claims the successors of Sena y Baca, brought a proceeding in such court for the confirmation of the Galisteo Grant, and succeeded in getting that part of it known as the "Galisteo Ranch," the property in controversy, confirmed.

On April 3rd, 1901, after the final rejection of the Bartolome Baca Grant, the plaintiffs herein, as heirs of Manuel Antonio Otero, brought this suit to recover the possession of the Galisteo Ranch.

Judgment was finally entered by the Learned Judge below in favor of the plaintiffs, and from such judgment the defendants appealed to this court.

## OPINION OF THE COURT.

MILLS, C. J.—It is evident from an examination of the record that this case was ably contested by the attorneys for both the plaintiffs and the defendants, and that every effort was used to secure and present to the Trial Court all of the evidence which minds trained in the subtlety of legal procedure by many years of active practice before the courts believed would be useful to the respective sides which they represented in the controversy now before us.

The questions discussed by counsel in their briefs are numerous, and involve complicated points of law, but in our opinion the real questions on which this case must finally be decided can be compressed into a small compass, by brushing to one side, what under our opinion of this case, are collateral and comparatively unimportant matters, many of which are elaborately urged in the briefs submitted to us by counsel. We will endeavor to dispose of this case along these lines.

1. We do not consider as well taken the contention of the appellants that the plaintiffs below could not maintain this suit without joining their tenants in common as parties. No provision of our laws, so far as we are aware, requires that all of the tenants in common should join in a suit to recover possession of real property. In fact this court has held in Neher v. Armijo, 9 N. M. 325,

"Defendant insists that these plaintiffs as tenants in common could not be joined as parties plaintiff, and their having so joined is fatal to their case. We do not interpret the law to be as defendant contends, but believe the better rule to be that tenants in common may join in ejectment and recover the whole property demanded as held by them in common, or they may sue separately and recover each one only his whole interest." The opinion in the Neher v. Armijo case, that tenants in common may join in an ejectment case and "recover the whole property demanded so held by them in common or they may sue separately and recover," is we think correct, but we think that that case is incorrect in limiting such recovery, in case a suit is brought by one of several tenants in common to, "each one only his whole interest," and to that extent the case of Neher v. Armijo is reversed. We think the true rule to be that a tenant in common may sue separately in ejectment, and that if the defendant shows no title, he is entitled to recover possession of the entire estate "in subordination, however, to the rights of his cotenants." As is well said in Hardy v. Johnson, 1 Wall. 371, "The action of ejectment determines no rights but those of present possession; and that one tenant in common has such rights as against all parties but his co-tenants, or persons holding under them, is not questioned."

That a tenant in common may sue without joining the other tenants in common is also held as late as 1898, when the Supreme Court of the United States quotes approvingly from 12 D. C. App. 51, 60, as follows to-wit: "The original rule at Common Law was, that tenants in common could only sue separately, because they were separately seized, and there was no privity of estate between them. Mobley v. Brunner, 59 Pa. St. 481; Corbin v. Cannon, 31 Miss. 570, 572; May v. Slade, 24 Texas, 205, 207; 4 Kent Com. 368."

"The practice soon became general, however, in the United States to permit them to sue either jointly or severally as they might elect. 7 Enc. P. & P. 316, and cases cited. This seems to have been the practice in the District of Columbia, and, so far as we are advised, has never been

questioned. Tenants in common may join in an action if they prefer to do so, but it is with the risk of the failure of all if one of them fail to make out a title or right to possession;" and the Supreme Court adds to this quotation the words, "These remarks express the rule correctly." Davis v. Coblens, 174 U. S. 719. The law is also laid down in 15 Cyc. 8, to be, that it is not necessary that all the tenants in common should unite in the action, although they may join in it for their common estate.

2. We will now consider the agreement in writing signed by Otero and Sena y Baca, on which this controversy is largely based, to determine whether it is a deed or an agreement to convey, for the decision of this point is of vital importance to the parties to this case.

From the standpoint of performance contracts have been divided into two classes, executed and executory. "A contract is executed where everything that was to be done is done, and nothing remains to be done. A grant actually made is within this category. Such a contract requires no consideration to support it. A gift consummated is as valid in law as anything else. Dartmouth College v. Woodward, 4 Wheat. 518. An executory contract is one where it is stipulated by the agreement of minds, upon a sufficient consideration that something is to be done or not to be done by one or both of the parties. Only a slight consideration is necessary. Pillans v. Van Mierop, 3 Burr 1663; Forth v. Stanton, 1 Saund 210, Note 2, and the cases therein cited." Farrington v. Tennessee, 95 U. S. 679.

An examination of the contract or agreement entered into between Otero and Sena y Baca, and which is set out in full in the statement of facts preceding this opinion, convinces us that it was an executory contract, (although it contains words of present purchase and sale), for the conveyance of the Galisteo Ranch by Otero to Sena y Baca, upon the happening of a certain contingency, viz: the adjudication and approval of the Bartolome Baca Grant. The wording of the contract provided that Sena y Baca could take possession of the Galisteo Ranch and enjoy the products of the same, until the proper

documents were executed to convey the title to him, which documents were to be executed on the favorable adjudication and approval' (confirmation) of the Bartolome Baca Grant. The wording of the agreement is unequivocal and plain, that the deed of conveyance to the Galisteo Ranch was to be made when the Bartolome Baca Grant was favorably adjudicated and approved. Nor can it be contended that the contract of June 22nd, 1878, was a deed, for it is signed by both Otero and Sena y Baca, and not alone by Otero, the then owner of the Galisteo Ranch. If the instrument in question had been signed by Otero alone, there would have been more force than now exists in the contention of the appellants that it was a deed transferring the title to real estate rather than a mere agreement to execute deeds to convey on the happening of certain events. Another thing which leads us to conclude that the writing was an executory contract and not a deed is that it is not acknowledged before any officer having the power to take acknowledgments to deeds, nor before any one, and as long ago as 1852, our legislature passed an act which was approved on January 12th, of that year, which provided in Sec. 5 that, "every instrument in writing by which real estate is transferred or affected, in law or equity, shall be acknowledged and certified to in the manner hereinafter prescribed." Section 6, of the same acts, sets out the officers before whom such acknowledgments might be taken. This law was in force at the time of the signing of the agreement or contract on June 22nd, 1878, and must have been known to the parties who signed it, for the evidence discloses that one of them at least was a man of affairs and one who was familiar with the working of the legislative bodies of the Territory.

In arriving at a conclusion as to whether or not the writing which is the basis of this controversy is a deed or contract, we must consider it as an entirety. We cannot pick out a few words or a line here and there, and determine from them what it is. As the Supreme Court of the United States says, "We agree generally that although there are words of conveyance *in praesenti* in a contract for the purchase and sale of lands, still, if from the whole instru-

ment it is manifest that further conveyances were contemplated by the parties, it will be considered an agreement to convey, and not a conveyance. The whole question is one of intention to be gathered from the instrument itself. Jackson v. Moncrief, 5 Wend. 26; Ogden v. Brown, 33 Penn. St. 247; Philips v. Swank, 120 Penn. St. 76; Williams v. Paine, 169 U. S. 55.

We have gone over the written instrument dated June 22nd, 1878, very carefully, and have come to the conclusion that it is not and was not intended to be a deed for the conveyance of the Galisteo Ranch, but that it was an executory contract, by the terms of which a deed for its conveyance was to be delivered by Manuel Antonio Otero to Jesus Sena y Baca, on the favorable adjudication and confirmation of the Bartolome Baca Grant. As the Bartolome Baca Grant was finally rejected by the Supreme Court of the United States no necessity arose for Otero or his heirs to give deeds of conveyance for the Galisteo Ranch.

3.  Holding that the instrument in writing under which Sena y Baca took possession of the Galisteo Ranch and held the same was an executory contract, we must determine the nature of the possession of the said ranch by Sena y Baca and his successors in title, with the view of determining whether or not title has been acquired by adverse possession.

The evidence in this case discloses that Sena y Baca in obtaining the confirmation of the Galisteo Grant, deraigned his title through Manuel Antonio Otero by virtue of the executory contract, and thus recognized the title of his vendor to the premises. No claim was made by the defendants that their title arose from any other source.

Sena y Baca then, entered into the possession of the lands in controversy by virtue of the contract, and with the permission of Manuel Antonio Otero, and it is generally held that a possession by permission or license from the owner is not adverse and cannot ripen into title, no matter how long continued or however exclusive it may be. 1 Cyc. 1030, and cases cited in Note 66, from twenty-seven states, and from England, Canada, and the Supreme Court of the United States. The possession of the

Bergere v. Chaves.

occupant under such circumstances is considered as the possession of him upon whose pleasure it continues. Pulaski County v. State, 42 Ark. 118, and again in 1 Cyc. 1044, the rule is stated to be, and many cases are cited in its support, that, "Where one enters into and holds possession of lands under an executory contract of purchase or bond for title, the entry and possession are in subordination to the title of the vendor until payment or performance of all the conditions by the vendee or until the vendee has distinctly and unequivocally repudiated the title of his vendor, which repudiation is brought expressly or by legal implication to the vendor's knowledge." The reason for this rule forbidding a person who has gone into possession under a contract to purchase is the injustice of allowing a person who has obtained possession by admitting title of another, to enjoy that title, and, in case of failure of proof of it, hold the premises himself. Howard v. McKenzie, 54 Texas 171; Kirk v. Taylor, 8 B. Monroe (Ky.) 262; McKelvain v. Allen, 58 Tex. 383; Clouse v. Elliott, 71 Ind. 302.

The evidence in this case nowhere discloses that Sena y Baca, or his assigns, ever distinctly and unequivocably repudiated the title of Manuel Antonio Otero. When Sena y Baca disposed of whatever title he had in the Galisteo Ranch to Rumberg, he did so by a quit-claim deed, and handed Rumberg the executory contract which he had in his possession, and this contract appears to have always been given to the occupants of the real estate in controversy down to the present day, for we find it in the possession of the defendants, when this suit is brought, and it is introduced by them in evidence, to support their claim that they own the property in fee.

We are aware that many points are raised in the briefs of both appellants and the appellees which we have not discussed, but as before stated, under the view which we have taken of this case, we do not think that it is necessary for us to discuss or determine them, and we therefore refrain from so doing, although we have read and considered them with much care.

Finding no reversible error in the judgment of the court below, the same is therefore affirmed, and it is so ordered.