# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __April 13, 2016__

**NO. 33,390**

**ILA BETH HANCOCK,**

    Plaintiff-Appellant,

v.

**RAY NICOLEY,**

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY**
**Albert J. Mitchell, Jr., District Judge**

Caren I. Friedman
Santa Fe, NM

for Appellant

Schutte Law Office, LLC
Donald Schutte
Tucumcari, NM

for Appellee

**OPINION**

**BUSTAMANTE, Judge.**

{1}     Plaintiff Ila Beth Hancock appeals the district court's order in which it applied the doctrine of acquiescence to conclude that the boundary between her property and Ray Nicoley's property was marked by the fence line instead of the surveyed boundary because the parties had long treated the fence line as the boundary. In effect, the district court ordered the transfer of some of Hancock's property to Nicoley. We reverse and remand for further proceedings.

**BACKGROUND**

{2}     Plaintiff Ila Beth Hancock owned two parcels of land in Quay County. The two parcels lay to the west and south of Defendant Ray Nicoley's property.[1] For ease of reference, we call Hancock's parcels "the west parcel" and "the south parcel." Hancock co-owned the south parcel with her nephew, W.A. Hancock (the nephew). The west and south parcels met at the southwest corner of Nicoley's property. Hancock permitted her cattle to cross the southwest corner of Nicoley's property to reach a windmill and well on the south parcel and had done so for "at least 65 years."

{3}     In 2006, Hancock filed a complaint against Nicoley alleging that Nicoley had removed and relocated a portion of the fence between their properties at the corner such that her cattle could no longer pass from the west parcel to the south parcel. The

---

[1]See attachment 1.

theory of Hancock's complaint was that the previous location of the fence at the corner had become the boundary between the parties' properties by acquiescence. "The doctrine of acquiescence is principally based on an agreement, expressed or implied, of adjoining landowners, whereby they recognize or acquiesce in a certain line as the true boundary of their properties." *Stone v. Rhodes*, 1988-NMCA-024, ¶ 6, 107 N.M. 96, 752 P.2d 1112. "Generally, in order to prevail under the doctrine of acquiescence, a party must show by clear and convincing evidence that he and his neighbor recognize a physical boundary as the true dividing line of their property." *Id.* Under the doctrine, "[t]he 'boundary' is given such credence that after a certain period of time has lapsed, in the interest of peace and quiet, this dividing line is recognized as the true boundary dividing the properties." *Id.*

{4}     Based on this theory, the complaint alleged that Nicoley had trespassed and encroached on Hancock's property by moving the fence[2] and that such acts had caused damages. In addition, the complaint requested an adjudication of boundaries. Finally and alternatively, Hancock requested that she either be declared the fee owner of the corner by adverse possession or granted a prescriptive easement for use of the corner.

---

[2]Nicoley disputed that he removed the old fence. He maintained that after the fence fell down, he replaced the old fence with a new one on the surveyed property line.

3

{5}    In his answer, Nicoley "agree[d] that an adjudication of the boundary together with rights of ingress and egress between the parties should be determined." He denied that Hancock had possession of the corner by adverse possession or held a prescriptive easement and denied Hancock's assertions as to the fence lines. Nicoley also counterclaimed, alleging that he held a prescriptive easement at the northeast corner of the west parcel. The counterclaim is not at issue in this appeal.

{6}    At a bench trial on January 5, 2010, Hancock presented her own testimony as well as testimony by her nephew and her brother. Hancock testified that the fence that Nicoley had removed had been in the corner for "at least [sixty-five] years." Nicoley admitted a 1983 retracement survey of the parties' properties. This survey showed that the fence line between the south parcel and Nicoley's property was south of the surveyed boundary between the properties.

{7}    After Hancock rested her case, Nicoley moved for dismissal of all counts except for the prescriptive easement claim. As to the claim for adjudication of boundaries, Nicoley argued specifically that the claim must be dismissed for failure to join an indispensable party, Hancock's nephew and co-owner. The district court denied the motion as to the trespass and encroachment claims, and stated that it would dismiss the adverse possession claim. It then stated that the claim for adjudication of boundaries would be dismissed because "we don't have indispensable parties because

[the nephew], the co-owner of the [south parcel,] hasn't been joined." The district court reiterated after closing arguments that it would not address the boundary between the south parcel and Nicoley's property other than at the corner because the appropriate parties were not joined, stating, "What's in front of me is figuring out how you-all are going to get along on this corner." None of the dismissals were ever memorialized in writing.

{8} Hancock and Nicoley both submitted requested findings of fact and conclusions of law after the bench trial. Hancock requested findings that "[Hancock] and [Nicoley] have mutually recognized, respected and honored the fences between them as boundary lines since [Nicoley] purchased his tract in 1993," and that "the . . . fence lines between the [south parcel and Nicoley's property] are the boundary fences at the locations where the fences have historically existed." She also requested a conclusion of law that "[t]he fence lines between [Hancock's] and [Nicoley's] properties are boundary lines."

{9} Nicoley requested a finding that the fence line between the south parcel and his property was "actually [five] feet south of the common [surveyed] boundary." He also requested a conclusion of law that "[Hancock] failed to show a boundary by acquiescence."

5

{10} Nine months after the bench trial, the district court issued a letter ruling. In the letter, the district court stated that both Hancock and Nicoley held easements across each other's property. The letter did not address the location of the boundary between the south parcel and Nicoley's property.

{11} Six months later, the district court held a status conference and stated that its final judgment would be issued within a week. At this conference, Hancock offered to provide the district court with a survey she did of her land. The judge stated he did not think the Hancock's survey would "have that much effect on the case." Another status conference was held nine months later, two years after the trial. The district court stated that the final judgment would be issued shortly thereafter. A third status conference occurred seven months later, but only Nicoley was present.

{12} A fourth status conference occurred in December 2012, nearly three years after trial. At this conference, Hancock pointed out that the fence between her south parcel and Nicoley's property was not on the surveyed property line. Hancock stated, "the other issue which was not before the court is that the [boundary between the south parcel and Nicoley's property] was off significantly from what the property line is, all the way down. And the court didn't rule on that. That's not something that we're here for." Nicoley agreed that the issue of the boundary "was an issue that really wasn't before the court" and that "[i]t was on the survey, but it wasn't an issue . . .

6

anyone had asked the court to rule on, concerning whether or not . . . Nicoley owned that particular piece of land." The district court also appeared to agree and stated, "we [are] focusing really only on the corner," and that "if we have to take up [the fence line between the south parcel and Nicoley's property], counsel, I'll let you all talk about whether that needs to be a separate lawsuit, or whether it simply needs to be [an] amended pleading in this lawsuit." We infer from these comments by the parties and the district court that, even if the district court's dismissal of the adjudication of boundaries claim was not memorialized in writing after the bench trial, all involved agreed as late as December 2012 that the location of the boundary line between the south parcel and Nicoley's property was no longer before the court, except for as it pertained to Hancock's passage through the contested corner.

{13}     This understanding is bolstered by subsequent events. Ten days after this status conference, the district court sent a letter to the parties in which it stated that Hancock had "chose[n] not to pursue" an action related to the difference between the fence line and the surveyed boundary. It also expressed concern that a new issue was being raised long after the bench trial on the merits.

> As we all know, the legal boundary between two properties can be either the survey line, the line agreed to by the parties, or the line ordered by the [c]ourt. I am greatly concerned that, frankly, years after what we all believed was the final [m]erits [h]earing, one party now wants to introduce evidence that was easily discoverable prior to the [m]erits

[h]earing, and also raise additional issues that may arguably go to the merits that were already tried.

The letter concluded with an instruction to Hancock to "file an appropriate written motion with a supporting brief" if she wished to "expand the scope of litigation." Hancock did not do so.

{14}     A final status conference was held in January 2013. Finally, in October 2013, just shy of four years after trial, the district court issued its final judgment. Contrary to the letter decision, the district court denied both parties' easement claims. In its findings of fact, the district court accepted Hancock's requested finding that "[Hancock] and [Nicoley] have mutually recognized, respected[,] and honored the fences between them as boundary lines since [Nicoley] purchased his tract in 1993." Although the district court also echoed Nicoley's requested finding that "the boundary fence line running east and west is actually south of the legal description," it found that "[Hancock] established by clear and convincing evidence that the fence line on the southern side of [Nicoley's] property is the legal boundary line as it is long established and recognized by long recognition of abutting owners." In a drawing attached to the final judgment, the district court noted that, from the corner to a point 200 feet east of the corner, the boundary between the properties is the "legal boundary by deed and survey." However, it also noted that from that point to the eastern edge of Hancock's property, the "[f]ence = legal boundary by acquienscence [sic]." The

final judgment stated that "[Hancock's] request that the fence line at the south side of [Nicoley's property] is the legal boundary, except for on the west two hundred feet of that fence line[,] is granted." The district court also stated that "[s]ince evidence presented to the [district c]ourt was that the fence line is south of the survey boundary, . . . [Nicoley] shall have prepared a legally sufficient survey setting forth the description of the property lying between the fence and the south boundary of the northeast quarter [of Hancock's property] within sixty days." The judgment permitted Hancock thirty days to object to the survey. Finally, the district court stated,

> As to the west two hundred feet, the parties shall each be half responsible for the cost[s] of a survey to properly locate the boundary, and to erect a fence along the west two hundred feet. At the end of the two hundred feet there should be a ninety degree jog to the existing fence line.

{15} In summary, both the parties and the district court reversed direction multiple times throughout this protracted litigation. For instance, Hancock requested the adjudication of boundaries in her complaint, testified that the fence lines were the proper boundaries by acquiescence, and requested findings of fact that the fence lines marked the boundaries of her property. Later, she argued that the location of the fence lines was not at issue except at the disputed corner and that the district court should not decide the issue. Even though she requested findings of fact that the district court adopted, she now argues that the district court erred in doing so. Similarly, Nicoley

9

moved for dismissal of the adjudication of boundaries claim at trial and requested a conclusion of law that Hancock had failed to prove that the fence lines were the boundary by acquiescence. On appeal, he argues that the district court's conclusion to the contrary was correct and that the district court's dismissal of the claim—at his request—was incorrect. Finally, the district court first dismissed the adjudication of boundaries claim, then accepted both Hancock's requested finding of fact and conclusion of law as to the fence lines, and ultimately decided an issue it stated repeatedly it would not decide.

**DISCUSSION**

{17} Hancock appeals the district court's decision as to the boundary between the south parcel and Nicoley's land. She does not appeal the district court's decisions as to the easements claimed by either party.

{18} We conclude that the final judgment must be reversed and the matter remanded for several reasons. First, the district court erred in addressing the issue of the boundary between the properties beyond what was necessary to resolve the dispute over the corner after (1) ordering the boundary adjudication claim dismissed, (2) holding a hearing in which all agreed that it was not before the court, and (3) admonishing Hancock for raising it after the bench trial and stating that her pleadings would have to be amended before the court would address it. It is true that the district

court's oral dismissal of Hancock's adjudication of boundaries claim was never memorialized in writing, and that, consequently, the district court could have changed its mind as to the dismissal at any time prior to judgment. *State v. Morris*, 1961-NMSC-120, ¶ 5, 69 N.M. 89, 364 P.2d 348 ("An oral ruling by the trial judge is not a final judgment. It is merely evidence of what the court had decided to do but he can change such ruling at any time before the entry of a final judgment."); *see* Rule 1-058 NMRA (providing for entry of orders following announcement of a district court's decisions). Nevertheless, as a practical matter, the parties were at least somewhat entitled to rely on the district court's repeated assertions at the bench trial that it would not address that issue, especially when they were reinforced through subsequent explicit statements that the issue would not be decided.

{18}    Second, although it apparently determined that Hancock's nephew was a necessary party, the district court did not conduct a complete analysis of joinder under Rule 1-019 NMRA. Under Rule 1-019(A), "[a] person who is subject to service of process shall be joined as a party in the action if[] (1) in his absence complete relief cannot be accorded among those already parties; or (2) he claims an interest relating to the subject of the action" and resolution of the action without him "may . . . impair or impede his ability to protect that interest[.]" If the district court determines that a party should be joined under Rule 1-019(A), it should order that party to be joined.

*Srader v. Verant*, 1998-NMSC-025, ¶ 19, 125 N.M. 521, 964 P.2d 82 ("If joinder is not precluded by jurisdictional barriers, joinder is normally feasible, and the court orders joinder, thus ending the issue." (footnote omitted)); *see* Rule 1-019(A)(2)(b) ("If he has not been so joined, the court *shall* order that he be made a party.") (Emphasis added.) If the party cannot be joined, the district court next examines "whether 'in equity and good conscience' that party is indispensable to the litigation. If the party is indispensable, the court dismisses the case for nonjoinder." *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 39, 132 N.M. 207, 46 P.3d 668 (citation omitted); *see* Rule 1-019(B) (noting an action should be dismissed if the absent party is indispensable).

{19}     Generally, in a boundary dispute,

> [t]he owners of the adjoining lands and all persons having a direct interest in the result of a proceeding, legal or equitable, to establish boundaries are . . . necessary or indispensable parties, for otherwise they are not bound by any determination as to the location of the boundaries, and title to the land between [the] plaintiff and [the] defendant and the determination of a common boundary line cannot be established otherwise.

11 C.J.S. *Boundaries* § 195 (2016) (footnotes omitted); *see State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶¶ 48-49, 145 N.M. 769, 205 P.3d 816 (noting in dicta the "indispensable[]party doctrine" and stating that "[a]s a matter of law, it would appear incontrovertible that the boundary line between the Ranch and

the state lands could not have been reestablished without, at the very least, the presence in court of the state agencies which are the trustees of those very state lands"). However, the assessment of necessity and indispensability is "heavily influenced by the facts and circumstances of each case." *Gallegos*, 2002-NMSC-012, ¶ 42 (internal quotation marks and citation omitted). Here, it would appear from the district court's oral dismissal of the adjudication of boundaries claim that it concluded that Hancock's nephew was a necessary party, that he could not be joined, and that the claim could not "in equity and good conscience" go forward without him. *Id.* ¶ 39 (internal quotation marks and citation omitted). However, there is no evidence that the district court assessed whether the nephew could be joined, or whether the suit could proceed in his absence. *See Hall v. Reynolds*, 60 So. 3d 927, 931-32 (Ala. Civ. App. 2010) (holding that where heirs shared ownership of a property they were "at least necessary parties" under Rule 19(a) and remanding to the district court to determine whether the heirs could be joined, or if the action could proceed in their absence). Under these circumstances, the district court's judgment must be reversed and the matter remanded for determination of whether the nephew may be joined. *Hall*, 60 So. 3d at 931-32.

{20} Nicoley points to several cases addressing property disputes in which the courts have held that co-tenants are not necessary parties. *See, e.g.*, *Madrid v. Borrego*,

1950-NMSC-043, ¶ 6, 54 N.M. 276, 221 P.2d 1058; *De Bergere v. Chaves*, 1908-NMSC-006, ¶ 11, 14 N.M. 352, 93 P. 762. *De Bergere* is inapposite because it depends on law predating the adoption of Rule 1-019 and does not encompass the interest-based analysis contemplated by the rule. *See Shaw v. Shaw*, 603 So. 2d 287, 293 (Miss. 1992) (stating that the parties there erred in relying on pre-rule case law and failing to analyze joinder under Rule 19 of the Mississippi Rules of Civil Procedure); *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 10, 335 P.3d 1243 (stating that New Mexico adopted the federal rules of civil procedure in 1942). Similarly, although *Madrid* was filed after the adoption of the rules, its holding depends entirely on *De Bergere* and other early cases that did not address the impact of the rules of civil procedure. *Madrid*, 1950-NMSC-043, ¶ 6. Thus, the pertinence of its analysis to assessment of joinder under Rule 1-019 is suspect. *See Shaw*, 603 So. 2d at 293 (stating that "[a]lthough [a Mississippi case] was decided subsequent to the adoption of the Mississippi Rules of Civil Procedure, its failure to consider the implications of [MRCP] Rule 19 renders the validity of its non-joinder holding questionable").

{21}    Third, the final judgment includes several inconsistencies that, given the length of time between the bench trial and judgment, as well as the shifts in direction of both the litigants and the court, cause uncertainty as to the district court's intent. For

14

instance, Hancock's complaint arose after Nicoley erected a fence at the corner that was in a different place than the fence that had been there for "sixty-five years." As we understand it, Hancock's theory at trial was that, even if the new fence was consistent with the surveyed boundary, the old fence location at the corner had been long agreed to by the parties and thus was the legal boundary by acquiescence. Given the district court's conclusion that Hancock had prevailed in her boundary by acquiescence argument, it is not clear to us how it arrived at the conclusion that the boundary at the corner was the surveyed boundary, but the rest of the boundary was the fence line. In other words, if Hancock prevailed in her acquiescence argument, why did the district court's order reflect the opposite of what she originally requested as to the corner? Finally, since the premise of the doctrine of acquiescence is that the agreed-to boundary is given legal effect despite the boundary set out in a deed or survey, it is unclear what purpose the district court intended additional surveys to serve. *See UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 50 (stating that "[t]he doctrine [of acquiescence,] . . . holds that where parties agree, even implicitly upon a boundary, that boundary may be established as a matter of law *even if it is not accurate according to plats, surveys or other maps*" (emphasis added)). On remand, the district court should clarify its intention as to these issues.

**CONCLUSION**

{22}     For the foregoing reasons, we reverse the judgment as it relates to whether the fence line is the legal boundary between the south parcel and Nicoley's property and remand for further proceedings consistent with this Opinion.

{23}     **IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**M. MONICA ZAMORA, Judge**

_____

**J. MILES HANISEE, Judge**

**Attachment 1**

|                        |                          |
| ---------------------- | ------------------------ |
| Hancock<br>West Parcel | Nicoley                  |
|                        | Hancock<br>South Parcel  |