426 P.2d 589

**Jeanine Adams GRUSCHUS, Executrix of the Estate of Jack Adams, Deceased, Plaintiff-Appellant,**

v.

**C. R. DAVIS CONTRACTING COMPANY, Inc., a New Mexico corporation, Defendant-Appellee.**

**No. 8185.**

Supreme Court of New Mexico.

April 17, 1967.

Stephenson & Olmsted, Harry S. Connelly, Jr., Santa Fe, for appellant.

Rodey, Dickason, Sloan, Akin & Robb, Robert M. St. John, Albuquerque, for appellee.

## OPINION

SPIESS, Judge, Court of Appeals.

This is the second appeal of this case. For the opinion on the former appeal see Gruschus v. C. R. Davis Contracting Co., 75 N.M. 649, 409 P.2d 500 (1966).

The action was originally commenced by Jack Adams Construction Co., Inc., appellant, against C. R. Davis Contracting Co., Inc., appellee. During pendency of the first appeal Jeanine Adams Gruschus, executrix of the estate of Jack Adams, deceased, was substituted in the place of Jack Adams Construction Company as plaintiff-appellant. Appellant will be referred to as Adams and appellee as Davis.

Adams as the prime contractor undertook the construction of a four-lane concrete highway of some ten miles in length.

In the accomplishment of the contract Adams entered into a sub-contract with Davis, which required certain portions of the construction to be performed by Adams. Davis assumed the work of preparing and laying the concrete paving and Adams agreed to furnish Davis with all sand and aggregate necessary for the purpose at a price of $3.10 per ton. Davis was required to complete the work required under the sub-contract within a specified time.

The proceedings as originally instituted by Adams sought damages against Davis for failure to complete the sub-contract within the specified time. The scope of the proceedings, however, was substantially enlarged as a result of a counterclaim interposed by Davis and an additional claim made by Adams against Davis on account of the sand and aggregate furnished. The trial court adjusted the claims between the parties and rendered judgment for a balance it found to be owing to Davis by Adams. From this judgment the first appeal mentioned was taken.

On the first appeal we affirmed the judgment in part and reversed it in part. The reversal insofar as material to this appeal was upon two grounds. The first involved the quantity of sand and aggregate actually used by Davis. The second ground resulted from our conclusion that the sub-contract as it related to the delivery of sand and aggregate, was a requirement contract within the meaning of § 50A-2-306(1), N.M.S.A., 1953, and consequently whether Adams in good faith delivered a quantity of sand and aggregate which was not unreasonably disproportionate to the normal requirements for the purpose for which it was delivered was an essential issue of fact upon which no finding was made.

Upon remand the trial court was directed in both the opinion and mandate to find the amount of sand and aggregate actually used by Davis, and whether Adams in good faith delivered a quantity of sand and aggregate which was not unreasonably disproportionate to normal requirements for the purpose for which it was delivered.

The district court was limited in its jurisdiction upon remand by the opinion and mandate of this court to determining the matters therein specified. Wilson v. Employment Security Commission of New Mexico, 76 N.M. 652, 417 P.2d 455 (1966); Sproles v. McDonald, 74 N.M. 243, 392 P.2d 584 (1964).

After reinstatement of the cause upon the docket of the district court, the issues involved were submitted by the parties to the trial court upon the evidence which had been adduced at the first trial and briefs furnished by the parties.

Upon such evidence and the briefs the court made the following findings of fact:

"1. The Court finds that the sand and aggregate actually used by Davis was 103,151.6475 tons.

"2. The Court finds that the sand and aggregate delivered by Adams to Davis was unreasonably disproportionate to the requirements for which it was delivered.

"3. The Court finds that the amount of sand and aggregate delivered by Adams was too excessive to have been delivered in good faith."

Judgment was rendered in favor of Davis and against Adams in the sum of $78,256.17 from which this appeal has been prosecuted.

Before considering the points relied upon by Adams for reversal, we call attention to the fact that both parties agree a mathematical error occurred in computing the number of tons of material used by Davis as expressed in finding No. 1; the tonnage should have been 103,187.025 instead of 103,151.6475. As a result, the judgment, if affirmed, should be reduced by $109.67.

Three points are relied upon for reversal. Adams contends first that pursuant to the sub-contract, he furnished and delivered to Davis', Stockpiles 114.061 tons of concrete aggregate; that the trial court erred in adopting finding No. 1 and in failing to adopt Adams' requested findings in support of the quantity of aggregate he claimed to have delivered.

As we have stated, the trial court was required to find the amount of sand and aggregate used by Davis and with this direction it strictly complied.

Adams takes the position that finding No. 1 is not supported by substantial evidence but that the evidence does support a finding that 114,061 tons at least were delivered to Adams' stockpiles. To account for this quantity he calls attention to evidence which tends to establish that approximately 55 tons of concrete aggregate was used in constructing temporary roads, 4611 tons was contained in rejected or wasted concrete, that approximately 3360 tons of aggregate was used in unfit and contaminated concrete, and 4264.4 tons remained in stockpiles after conclusion of the work.

To establish the quantity of material which actually went into the finished pavement, Adams refers to the following statement contained in our opinion on the first appeal:

"The court found that Davis actually used 100,265.865 tons of sand and aggregate in preparing the concrete pavement. It appears to be undisputed that 64,897.5 cubic yards of concrete was placed in the pavement by Davis. The highway department's specifications require 530 pounds of combined sand and aggregate per sack of cement for each cubic yard of concrete, and likewise require six sacks of cement to each cubic yard of

concrete. Simple multiplication demonstrates that 3180 pounds of the combined sand and aggregate was necessarily used in each cubic yard of concrete used in the pavement. By reason of the foregoing, it appears that the computation used as the basis of the trial court's findings of the quantity of sand and gravel actually consumed in mixing the concrete pavement is in error and required that the cause be remanded for a proper finding on this issue."

It is contended that since on remand the cause was submitted to the trial court upon the same evidence as was considered by the Supreme Court on the prior appeal that this court's statement as to the amount of aggregate incorporated in the finished pavement is a finding of fact and is the law of the case and consequently controlling on this appeal.

█ We do not consider the statement in the opinion on the first appeal as a finding of fact. It was made to point out the mathematical error in computation and is not framed with the certainty of a finding of fact.

█ The general rule according to our research is that the doctrine of the law of the case applies only to questions of law and has no application to purely fact questions. In re Baird's Estate, 193 Cal. 225, 223 P. 974 (1924); Horsman v. Maden, 69 Cal.App.2d 11, 157 P.2d 882 (1945);

Commonwealth v. Filiatreau, 166 Ky. 128, 179 S.W. 20 (1915); Gulf & Ship Island R. Co. v. Simmons, 153 Miss. 327, 121 So. 144 (1929).

█ Further, this court is not a fact finding body. Jontz v. Alderete, 64 N.M. 163, 326 P.2d 95 (1958); Guidry v. Petty Concrete Co., 77 N.M. 531, 424 P.2d 806, issued March 6, 1967.

█ The witness Brown, Davis' administrative assistant testified that the total cubic yards of the batches of concrete which were mixed was 64,897.25; which amount included wasted and dumped concrete. This testimony, in our opinion, substantially supports the trial court's finding No. 1, subject, however, to the mathematical error, which we have mentioned.

It is next contended that all of the concrete aggregate delivered by Adams to Davis was delivered in good faith; that the amount was not unreasonably disproportionate to Davis' requirements, and that the trial court erred in adopting the findings 2 and 3.

This point relates to the second direction to the trial court contained in the opinion and mandate and as stated required a finding as to whether Adams in good faith delivered a quantity of sand and aggregate which was not unreasonably disproportionate to the normal requirements for the purpose for which it was delivered.

■ In compliance with this direction the trial court made findings 2 and 3. In considering this point we bear in mind the rule that this court must view the evidence in the most favorable light to support the trial court's findings and before reversing we must be convinced that the findings cannot be sustained by evidence or inferences therefrom. Hoskins v. Albuquerque Bus Co., 72 N.M. 217, 382 P.2d 700 (1963); Lovato v. Hicks, 74 N.M. 733, 398 P.2d 59 (1965); Lewis v. Barber's Super Markets, Inc., 72 N.M. 402, 384 P.2d 470 (1963); Perschbacher v. Moseley, 75 N.M. 252, 403 P.2d 693 (1965).

The testimony of the witness Brown, which we considered as furnishing substantial support for finding No. 1, was that 64,879.25 yards of concrete were prepared, which included all wasted and dumped concrete and that which actually went into the pavement. This quantity of concrete represented 103,187.25 tons of sand and concrete aggregate in accordance with the agreed figure. Adams' claim of 114,061 tons is 10,875.975 tons in excess of the quantity Brown testified was mixed into concrete. This amounts to at least 10% in excess of all material actually used, wasted and dumped. In terms of money based upon the sub-contract price, the excess represents more than $33,000.00.

■ This factual situation would, in our opinion, warrant an inference upon which findings 2 and 3 could properly be based.

It is finally contended that Adams is entitled to be credited in accordance with the amount provided in the sub-contract for 114,061 tons of sand and aggregate.

Our determination, however, of the other points disposes of this contention as against Adams.

All findings of fact made on remand by the trial court are in our opinion supported by substantial evidence.

Due to miscalculation, the amount awarded Davis should be reduced by $019.67. The award to Davis should be corrected to read $78,146.50 instead of $78,256.17. The trial court is directed to so amend its judgment. So amended, the judgment will be affirmed.

It is so ordered.

CHAVEZ, C. J., and COMPTON J., concur.