This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**PARKVIEW COMMUNITY DITCH ASSOCIATION,**

Plaintiff-Appellee,

v.                                                                          **No. A-1-CA-36034**

**DOUGLAS PEPER and LANCE PEPER,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Francis J. Mathew, District Judge**

Daniel A. Sanchez
Daniel J. Sanchez
Albuquerque, NM

for Appellee

The Law Office of Scott M. Davidson, Ph.D., Esq.
Scott M. Davidson
Albuquerque, NM

for Appellants

New Mexico Legal Aid
David A. Benavides
Santa Fe, NM

Holland & Hart LLP
Larry J. Montano
Charlie S. Baser
Santa Fe, NM

Natural Resources and Environmental Law Clinic
University of New Mexico School of Law

Gabriel Pacyniak
Jeanette Wolfley
Bryan Gonzalez, Clinical Law Student
Alison Goodwin, Clinical Law Student
Peter Kelton, Clinical Law Student
Lauren Wilber, Clinical Law Student
Deshawnda Chaparro, Clinical Law Student
Mary Alexis Volner, Clinical Law Student
Ruben Guajardo, Clinical Law Student
Alan Barton, Clinical Law Student
Reyes DeLaCruz, Clinical Law Student

for Amici Curiae The New Mexico Acequia Association, The New Mexico Land Grant
Council, The Acequia Larga De Las Cruces, The Merced Del Pueblo De Chilil, The
Merced Del Pueblo De San Joaquin Del Rio De Chama, and The Acequia Madre Del
Llano

## MEMORANDUM OPINION

**IVES, Judge.**

**{1}** Douglas Peper and Lance Peper (the Pepers) appeal the district court's judgment dismissing their claim against Parkview Community Ditch Association (the Association) pursuant to the Open Meetings Act (OMA), NMSA 1978, §§ 10-15-1 to 10-15-4 (1974, as amended through 2013). The Pepers argue that the district court erred by (1) failing to consider their claim that the Association violated their rights under Article VII, Section 3 of the New Mexico Constitution by holding part of a meeting in the Spanish language; and (2) concluding that the Pepers' OMA claim was invalid under Section 10-15-3(B) because they failed to provide written notice of the Association's alleged OMA violations at least fifteen days before bringing their claim in district court. We affirm.

## BACKGROUND

**{2}** This is the second time this case comes to us on appeal. *See Parkview Cmty. Ditch Ass'n v. Peper* (*PCDA I*), 2014-NMCA-049, 323 P.3d 939. The Pepers and the Association, which manages an acéquia system, became entangled in litigation after the Pepers installed a diversion structure called a headgate on the acéquia system without the permission of the Association or its mayordomo. *Id.* ¶¶ 1, 4. The Association sued the Pepers, petitioning the district court for injunctive relief in the form of an order requiring the Pepers to remove the headgate. *Id.* ¶ 5. The Pepers answered and brought counterclaims alleging that the Association had violated the OMA, but did not make any claims based on our state constitution. *Id.* After evidentiary hearings, the district court found that it had jurisdiction and ordered the Pepers to remove the headgate. *Id.* ¶ 8.

**{3}**     The Pepers appealed, arguing that: (1) because of the Association's violations of the OMA, the commissioner and mayordomo were never properly elected as officers in 2010 and lacked standing to bring a lawsuit; (2) the lawsuit was invalid because the Association did not properly meet and vote to initiate it; and (3) the mayordomo lacked the authority in 2012 to make findings about the headgate or compel compliance with those findings because he had not been properly elected to serve in 2012 at the December 2011 meeting.[1] *Id.* ¶ 9. This Court rejected the Pepers' first two arguments. *Id.* ¶¶ 12-17.

**{4}**     We did not reach the merits of the Pepers' third argument because we "conclude[d] that the district court neither heard nor decided the question of whether the Association's officers were properly elected in 2011." *Id.* ¶ 21. We explained that the district court had refused to take evidence about whether the mayordomo was properly reelected in December 2011, and that the district court had declined to decide whether the mayordomo had been elected for the 2012 term. *Id.* Accordingly, we "remand[ed] to the district court for findings on whether the election of officers in 2011 was properly conducted under the OMA." *Id.*

**{5}**     On remand, the Pepers sought leave to amend their pleadings to add new claims based on what they alleged were "[more] recent violations of the [Inspection of Public Records Act] and OMA."[2] The district court denied the Pepers' request because it concluded that our opinion and mandate in *PCDA I* limited its jurisdiction on remand to the issue of the propriety of the Association's 2011 officer elections under the OMA. Consistent with its order denying the Pepers' motion to amend, the district court's pretrial order also limited the scope of the bench trial to the same OMA compliance issue. After trial the Pepers submitted proposed findings and conclusions, raising, for the first time, allegations that the Association had violated the state constitution.

**{6}**     In its judgment against the Pepers and its supporting findings of fact and conclusions of law, the district court did not adopt any of the Pepers' proposed findings or conclusions regarding their state constitutional claim. Instead, the court rejected the Pepers' OMA challenges to the Association's December 2011 meeting. The district court concluded that "the Association substantially complied with [the OMA,]" in part because "[t]he OMA does not require that all government meetings be conducted in English or that Government entities provide translators for all in attendance who do not speak the language common to the community being used in the meeting, whether such language is English, Spanish or some other language common to the community." The district court also found that "[p]ersons in attendance at the meeting of December 4, 2011, offered to translate the proceedings from Spanish to English for the Defendants Peper, but Defendants Peper chose not to accept such offers." Finally, the district court denied the Pepers' OMA claim because they "failed to comply with a condition precedent for an individual to apply for enforcement through the district courts under

---

1 Our opinion in the first appeal includes a more detailed summary of the proceedings that occurred before that appeal. We discuss those proceedings only as needed to explain our decision in this appeal.

2 At this juncture, the Pepers' proposed new claims did not include the state constitutional claim they raise in this appeal.

[Section 10-15-3(B) of] the OMA" by invoking the jurisdiction of the district court less than fifteen days after notifying the Association of the alleged OMA violations.

**{7}** Shortly after trial, the Pepers moved for a new trial or, in the alternative, to amend the district court's findings of fact and conclusions of law to address the state constitutional claim at issue in this appeal. The Pepers argued that the Association violated their rights under Article VII, Section 3 by conducting part of the December 2011 meeting in Spanish and that the Pepers had complied with Section 10-15-3(B). The district court denied their motion. The Pepers appealed.

## DISCUSSION

### I.      The District Court Lacked Jurisdiction Over the Pepers' State Constitutional Claim on Remand

**{8}** The Pepers argue that the district court should have concluded that the Association violated their state constitutional rights to vote and hold public office when it conducted the election of the Association's officers in Spanish during the December 2011 meeting. They rely on Article VII, Section 3 of the New Mexico Constitution, which states, in pertinent part:

> The right of any citizen of the state to vote, hold office or sit upon juries, shall never be restricted, abridged or impaired on account of religion, race, language or color, or inability to speak, read or write the English or Spanish languages except as may be otherwise provided in this constitution.

In response, the Association argues that the district court lacked jurisdiction to address the Pepers' state constitutional claim. Whether the district court had jurisdiction is an issue of law we review de novo. *City of Roswell v. Smith*, 2006-NMCA-040, ¶ 10, 139 N.M. 381, 133 P.3d 271. Because we agree with the Association on the jurisdictional question, we do not reach the merits of the Pepers' state constitutional claim.

**{9}** The district court correctly declined to address that claim, which was beyond its jurisdiction after we remanded the case at the conclusion of the Pepers' first appeal. When an appellate court remands a case to the district court, as we did in *PCDA I*, the appellate court's "opinion and mandate set forth the full extent of the jurisdiction of the district court."[3] *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 22, 145 N.M. 769, 205 P.3d 816. A district court is "not free to enlarge or alter the issues presented in the mandate." *Id.* In other words, "the duty of a lower court on remand is to comply with the mandate of the appellate court, and to obey the directions therein without variation[.]" *Vinton Eppsco Inc. of Albuquerque v. Showe Homes, Inc.*, 1981-NMSC-114, ¶ 4, 97 N.M. 225, 638 P.2d 1070.

---

3 "If there is any doubt or ambiguity regarding the mandate, the *meaning* of the Court of Appeals opinion governs." *UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 22.

**{10}** The district court adhered to these principles when it declined to address the Pepers' claim under Article VII, Section 3. In *PCDA I*, we specifically limited the scope of the district court's jurisdiction by "remand[ing] for proceedings on the issue of whether the Association's elections for 2012 officers complied with the OMA."[4] 2014-NMCA-049, ¶ 28; *see id.* ¶ 21 ("[W]e remand . . . for findings on whether the election of officers in 2011 was properly conducted under the OMA."). After our remand, the district court correctly confined the litigation to that issue. Had it addressed the issue of whether the Association violated the Pepers' rights under Article VII, Section 3 by conducting part of the December 2011 meeting in Spanish, the court would have exceeded its jurisdiction by "enlarg[ing] or alter[ing] the issue[]" set forth in our opinion in *PCDA I. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 22. The district court recognized that it had limited jurisdiction on remand and lacked jurisdiction to consider any issues not identified in this Court's mandate. The district court followed New Mexico law.

**{11}** The Pepers do not address New Mexico precedent governing the scope of a district court's jurisdiction on remand from an appellate court. Instead, they rely exclusively on *Trujillo v. State*, 1968-NMSC-179, 79 N.M. 618, 447 P.2d 279, and *Sanchez v. Attorney General*, 1979-NMCA-081, 93 N.M. 210, 598 P.2d 1170, neither of which is on point. *Trujillo* and *Sanchez* do not address the scope of a district court's jurisdiction on remand after an appeal. They stand for the basic proposition that our district courts are courts of general jurisdiction. *See Trujillo*, 1968-NMSC-179, ¶ 3; *Sanchez*, 1979-NMCA-081, ¶ 21. As such, they have "the authority to consider all matters not exclusive to other courts, including constitutional claims in the first instance." *El Castillo Ret. Residences v. Martinez*, 2017-NMSC-026, ¶ 22, 401 P.3d 751. General jurisdiction, however, does not allow district courts to address whatever issues the litigants choose to present *on remand*. On remand, as we have explained, an appellate court's mandate and opinion strictly circumscribe the district court's jurisdiction. In this case, the court's jurisdiction did not extend to newly-asserted claims, such as the Pepers' state constitutional claim. *UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 22.

**{12}** In this litigation, the Pepers enjoyed the same right to make claims, including state constitutional claims, enjoyed by other parties engaged in civil litigation in our district courts. *See* Rule 1-013 NMRA (stating requirements for bringing counterclaims); 1-015 NMRA (stating requirements for amending pleadings). After the Association sued the Pepers, the Pepers chose to bring a counterclaim alleging violations of the OMA during the December 2011 meeting, but chose not to bring a claim alleging violations of the state constitution during that same meeting. Had they raised a state constitutional claim, the district court—as a court of general jurisdiction—would have had authority to consider it. The Pepers' choices defined the scope of this litigation, including the Pepers' first appeal. That appeal narrowed the remainder of the litigation, leaving for the district court only the OMA claim regarding the December 2011 meeting. *See PCDA I*, 2014-NMCA-049, ¶¶ 21-22, 28. On remand, the court disposed of that claim and correctly declined to consider the state constitutional claim.

---

4 A copy of our opinion was attached to our mandate, which remanded the case to the district court for any further proceedings consistent with our opinion.

**II.	The Pepers Have Not Demonstrated Reversible Error in the District Court's Disposition of Their OMA Claim Regarding the December 2011 Association Meeting**

**{13}**	The Pepers argue that the district court erred by concluding that the Pepers failed to comply with NMSA 1978, Section 10-15-3(B), which, as relevant, provides:

> [N]othing in [the OMA] shall prevent an individual from independently applying for enforcement through the district courts, provided that the individual first provides written notice of the claimed violation to the public body and that the public body has denied or not acted on the claim within fifteen days of receiving it.

The Pepers do not argue that they complied with Section 10-15-3(B). Instead, they ask us to carve a futility exception out of the OMA's private enforcement notice requirements, and they claim they fall within that exception because of "the futility of further efforts to reform the intransigent officials of the Association." We review issues of statutory interpretation de novo. *State v. Trujillo*, 2009-NMSC-012, ¶ 9, 146 N.M. 14, 206 P.3d 125. However, we find it unnecessary to determine whether the OMA includes a futility exception for two reasons, each sufficient, standing alone, to warrant affirming the district court's disposition of the OMA claim.

**{14}**	First, even if a futility exception exists and excuses noncompliance with Section 10-15-3(B), as the Pepers contend, we have no way of knowing whether this case falls within that exception. The Pepers' briefs include factual assertions about events that they claim demonstrate that compliance would have been futile, but the Pepers fail to support any of those assertions with citations to the record on appeal. Without citing evidence in the record, the Pepers discuss a series of communications—letters, a telephone call, and a face-to-face interaction—between the Pepers and the Association. We "will not consider . . . matters not of record." *In re Aaron L.*, 2000-NMCA-024, ¶ 27, 128 N.M. 641, 996 P.2d 431. The only portions of the record that the Pepers cite to substantiate their claim of futility are their proposed findings of fact and conclusions of law and their motion for new trial. But these are arguments of counsel, "not evidence that we may consider." *Beyale v. Ariz. Pub. Serv. Co.*, 1986-NMCA-071, ¶ 16, 105 N.M. 112, 729 P.2d 1366. The Pepers have provided no factual support for their contention that compliance would have been futile, and we will not scour the record to determine whether any such support exists. *See Muse v. Muse*, 2009-NMCA-003, ¶ 42, 145 N.M. 451, 200 P.3d 104 ("We are not obligated to search the record on a party's behalf to locate support for propositions a party advances or representations of counsel as to what occurred in the proceedings.").

**{15}**	Second, even if we were to accept the Pepers' argument regarding futility, we would affirm based on the district court's unchallenged conclusion that the Association substantially complied with the OMA. *See PCDA I*, 2014-NMCA-049, ¶ 13 ("Under the substantial compliance standard, when the OMA has been sufficiently followed so as to carry out the intent for which it was adopted and serve the purpose of the statute, no

violation has occurred." (alterations, internal quotation marks, and citation omitted)). The district court based its judgment against the Pepers on two alternative conclusions: (1) that the Pepers' OMA enforcement action was invalid because they failed to comply with a condition precedent in Section 10-15-3(B); and (2) that the Association substantially complied with the OMA. Although they must persuade us that both conclusions are wrong to prevail on appeal, the Pepers do not challenge the district court's substantial compliance conclusion. Because we must accept that unchallenged conclusion, whether the Pepers sought to enforce the OMA in accordance with Section 10-15-13(B) has no bearing on the outcome of this appeal. *See Rust Tractor Co. v. Consol. Constructors, Inc.*, 1974-NMCA-096, ¶ 7, 86 N.M. 658, 526 P.2d 800. The district court's substantial compliance conclusion adequately supports the district court's judgment.

**CONCLUSION**

**{16}** We affirm.

**{17} IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**MEGAN P. DUFFY, Judge**